UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KENNETH CAREY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  5: 09-91-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Kenneth Carey (Carey) and Defendant Michael J. Astrue, Commissioner of Social Security (the Commissioner).  [Record Nos. 12 and 13]  Carey argues that the administrative law judge's opinion is not supported by substantial evidence and applies an erroneous standard of law.  Thus, he seeks to reverse the Commissioner's decision that he is not entitled to a period of disability and Social Security Disability Insurance Benefits (DIB).  However, the Commissioner contends that the decision is supported by substantial evidence and should be affirmed.  For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Carey.

**I.**

Carey filed for DIB on January 27, 2004.  [Tr., p. 83-85]  His application states that he became unable to work due to his disability on September 6, 2002, but amended his onset date

-1-

to August 4, 2004.  [Tr., pp. 83, 567-568]  On October 6, 2005, Carey, along with his attorney Mark Morgan and vocational expert (VE) Dr. Ralph Crystal, appeared before Administrative Law Judge (ALJ) Don Paris in Lexington, Kentucky.  [Tr., p. 563-598]  On November 22, 2005, the ALJ issued an opinion denying Carey's applications.  [Tr., p. 54-60]  Based upon Carey's request, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings.  [Tr., p. 300-301]  On July 31, 2007, Carey, along with his attorney Mark Morgan and VE Joyce Forrest, appeared before ALJ Don Paris via video in Frankfort, Kentucky for a second hearing.  [Tr., p. 599-635]  Upon reconsideration, Carey's claim was again denied.  [Tr., p. 27-37]  The Appeals Council denied Carey's request for review on January 22, 2009.  [Tr., p. 12-14]  Having exhausted his administrative remedies, Carey has filed a timely action in this Court.

Carey was fifty-three years old at the time of the most recent ALJ's decision.  Carey dropped out of school in the eighth grade and has limited reading and writing skills.  [Tr., p. 572]  He previously worked on an assembly line for twenty-five years.  [Tr., p. 573-574]  Carey's alleges a disability due to pain in his shoulders and back.  [Tr., p. 575-577]  After reviewing the record and the testimony presented during the administrative hearing, ALJ Paris concluded that Carey has the following severe impairments: chronic right shoulder pain status post arthroscopy; chronic left shoulder pain status post surgery and manipulation under anaesthesia; degenerative joint disease of the lumbar and thoracic spine; and major depression, single episode, secondary to relationship problems.  [Tr., p. 29]  Notwithstanding these impairments, the ALJ found that

Caudill retained the residual functional capacity (RFC) to perform light work. [Tr., p. 31]

Specifically, the ALJ found that Carey retained the following RFC:

> lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; no repetitive pushing/pulling or use of hand controls with upper extremities, because prolonged usage of the upper extremities for these exertions would cause bilateral shoulder pain; he cannot climb ladders/ropes/scaffolds; only occasional stooping, kneeling, crouching, crawling or climbing of stairs/ramps because of degenerative joint disease of limbar and thoracic spines; only occasional reaching in all directions including overhead with non-dominant left upper extremity; no more than frequent reaching in all directions including overhead with dominant right upper extremity; no continuous repetitive work activity above head level; he should also avoid concentrated exposure to full body vibration or use of vibratory tools because of bilateral shoulder pain; the claimant also suffers from a major depression secondary to marital relationship problems; however, he has the mental capacity to understand, retain and carry out at least simple work activities, sustain the concentration and attention required of a simple work activity, adequately relate to co-workers and supervisors in an object focused work environment; he should have limited contact with the general public and he would be able to adapt to changes and pressures of a routine work environment without excessive productivity demands.

[Tr., p. 32] As a result of this assessment, the ALJ determined that Carey had not been under a disability as defined in the Social Security Act, from August 4, 2004, through the date of the decision on November 15, 2007. [Tr., p. 8]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*,

459 F.3d 640, 642 (6th Cir. 2006); *see* 20 C.F.R. 416.920.  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, a claimant must show that he suffers from a severe impairment.  20 C.F.R. § 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can do past work.  If he can, he is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Carey v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Carey alleges that the ALJ's decision denying benefits is not supported by substantial evidence and applies an erroneous standard of law. More specifically, he asserts that the ALJ: (1) failed to give the proper weight using the correct legal standard to the testimony of the treating physical therapist and failed to give good reasons for dismissing the testimony of the

treating physical therapist, and (2) failed to identify and resolve conflicts between the testimony

from the VE and the Dictionary of Occupational Titles (DOT).

## A.    The Treating Physical Therapist

In his most recent decision, the ALJ adopted and incorporated by reference the synopses

of the medical evidence from his decision dated November 22, 2005. [Tr., p. 32] Regarding

physical therapist Glenn Decker, the decision provides that:

> Physical therapist Glenn Decker limits the claimant to less than sedentary work
> in Exh. 14F, but this is not an acceptable medical source: the greater weight of the
> evidence is generally reserved for the opinions of medical specialists, however,
> provided such opinions are offered within their particular sphere of expertise. (20
> CFR 404.1527(d) and 416.927(d)).  Information from "other sources," including
> such practitioners such as physical therapists chiropractors, while it does not rise
> to the same consideration level as information from a licensed medical physician,
> "may" assist the Administration in understanding how a claimant's impairment
> affects the ability to work.  However it is of little benefit where the conclusions
> therefrom differ from those of the medical doctors. (20 CFR 404.1513(a),(d) and
> 416.913(a),(d)).  In t his case, the [ALJ] gives the report of Glenn Decker at Exh.
> 14F some weight but not controlling weight.  His assessment as to whether the
> claimant meets listing 1.02B is accorded no weight because this would require the
> expertise of a medical source not a physical therapist.

[Tr., p. 57-58]

Carey asserts that the ALJ  failed to give the proper weight using the correct legal

standard to the testimony of the treating physical therapist, Glenn Decker, and failed to give

good reasons for dismissing his testimony.  [Record No. 12, p. 4]  Generally, more weight is

given to the "opinions from [claimant's] treating sources," because a treating source is likely to

be most able to provide "a detailed, longitudinal picture of [the claimant's] medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations,

such as consultive examinations or brief hospitalizations."  20 C.F.R. § 404.1527(d)(2) (2010).

However, the Social Security Ruling 06-03p explains that "only 'acceptable medical sources'

can be considered treating sources . . . whose medical opinions may be entitled to controlling

weight."  Soc. Sec. Rul. 06-03p, 2006 WL 2263437, at *2-*3 (2006).  A physical therapist is not

listed as an "acceptable medical source."  20 C.F.R. § 1513 (2010).

Social Security Ruling 06-03p continues to explain that opinions from medical sources

that are "not technically deemed 'acceptable medical sources' . . . are important and should be

evaluated on key issues such as impairment severity and functional effects, along with the other

relevant evidence in the file."  2006 WL 2263437, at *3.  In addition, Social Security Ruling

06-03p provides that:

> [t]he fact that a medical opinion is from an "acceptable medical source" is a factor
> that may justify giving that opinion greater weight than an opinion from a medical
> source who is not an "acceptable medical source" because, as we previously
> indicated in the preamble to our regulations at 65 FR 34955, dated June 1, 2000,
> "acceptable medical sources" "are the most qualified health care professionals."
> However, depending on the particular facts in a case, and after applying the
> factors for weighing opinion evidence, an opinion from a medical source who is
> not an "acceptable medical source" may outweigh the opinion of an "acceptable
> medical source," including the medical opinion of a treating source. For example,
> it may be appropriate to give more weight to the opinion of a medical source who
> is not an "acceptable medical source" if he or she has seen the individual more
> often than the treating source and has provided better supporting evidence and a
> better explanation for his or her opinion.  Giving more weight to the opinion from
> a medical source who is not an "acceptable medical source" than to the opinion
> from a treating source does not conflict with the treating source rules in 20 CFR
> 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving
> Controlling Weight To Treating Source Medical Opinions."

2006 WL 2263437, at *4.

In addition, the Code of Federal Regulations requires that the ALJ "evaluate every medical opinion [] receive[d]." 20 C.F.R. § 404.1527(d) (2010). The ALJ must determine what weight to give the opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6) (2010).

The ALJ's decision correctly notes that Glenn Decker, a physical therapist, is not an acceptable medical source but that an opinion from a physical therapist may assist in understanding how a claimant's impairment affects the ability to work. [Tr., p. 57-58] The ALJ also explains that Glenn Decker's opinions differs from medical doctors but that he would still give his opinion "some weight but not controlling weight." [Tr., p. 57-58] The ALJ applies the correct legal standard and assigned Decker's opinion the proper weight based on his assessment of the facts of this case. Carey's assertion that the ALJ failed to give good reasons for dismissing Glenn Decker's testimony is without merit because the ALJ discussed in full detail his reasoning for assigning Decker's testimony with "some weight but not controlling weight." [Tr., p. 57-58]

**B.    The VE's Testimony**

Carey argues that the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT, as required by the Social Security Ruling 00-4p and the Appeals

Council's decision on September 13, 2006, Order of Remand.  [Record No. 12, p. 6]  In its

September 13, 2006, order, the Appeals Council instructed that, "before relying on the [VE]

evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence

provided by the [VE] and information in the [DOT] and its companion publication, the Selected

Characteristics of Occupation." [Tr., p. 301]  The ALJ may rely on the testimony of the VE, but

only if the hypothetical question posed accurately portrays claimant's individual physical and

mental impairments.  *Cline v.  Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (11th Cir. 1996) (citations

omitted).  Social Security Ruling 00-4p holds that

> before relying on VE or VS evidence to support a disability determination or
> decision, our adjudicators must: Identify and obtain a reasonable explanation for
> any conflicts between occupational evidence provided by VEs or VSs and
> information in the Dictionary of Occupational Titles (DOT), including its
> companion publication, the Selected Characteristics of Occupations Defined in
> the Revised Dictionary of Occupational Titles (SCO), published by the
> Department of Labor, and explain in the determination or decision how any
> conflict that has been identified was resolved.

Soc. Sec. Rul. 00-4p, 2000 WL 1898704, *1 (2000).

Here, the ALJ asked the VE a detailed hypothetical, and the VE testified that a person

with the limitations mentioned by the ALJ could work in light duty jobs. [Tr., p. 625]  The VE

specifically stated Carey could work in the security area;  as an inspector, tester, sorter or grader;

or as a laborer or hand packer.  [Tr., p. 625]  The VE further stated that these jobs were all

unskilled or entry-level.  [Tr., p. 626]  The ALJ then asked the VE if her testimony was

"consistent with the DOT title descriptions." [Tr., p. 627]  The VE responded that her testimony

was "[c]onsistent considering the DOT is somewhat obsolete and doesn't cover many of the

issues that we address in hearings." [Tr., p. 627]

Carey argument that there are conflicts between the DOT and the VE's testimony is without merit.  The VE specifically testified that her testimony was consistent with the DOT and Carey was afforded a full opportunity to cross-examine her.  The ALJ had no duty under Soc. Sec. Rul. 00-4p to interrogate her further.  *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (*citing Martin v. Comm'r of Soc. Sec.*, 170 F.App'x 369, 374 (6th Cir. 2006) ("Nothing in [Soc. Sec. Rul. 00-4p] places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). Further, it is the ALJ's job to evaluate the trustworthiness of a VEs testimony.  *Sias v. Sec. of Health and Human Servs.,* 861 F.2d 475, 480-481 (6th Cir. 1988).  As long as the VE is posed a hypothetical question that accurately portrays the claimant's individual physical and mental impairments, the ALJ may rely on the VEs opinion.  *Id.*; *See Cline*, 96 F.3d at 150.

Specifically, Carey asserts a light duty security guard is a semi-skilled job according to the DOT, not an unskilled and entry-level job as the VE testified.  However, as the Commissioner points out, the DOT includes some semi-skilled light duty security guard positions and some unskilled light duty security guard positions.  Carey further asserts that the DOT requires a cardboard inserter to constantly reach, not occasional reaching as the VE testified.  However, again as the Commissioner points out, the VE took the possibility of repetitive reaching as a cardboard inserter into account and reduced the number of jobs available by twenty percent.

Carey also contends there are other conflicts between the VE testimony and the DOT. He points to the DOT requiring significant contact with people as a light duty security guard, but

the hypothetical posed to the VE limited contact with the general public.  Further, he asserts that the DOT requires repetitive pushing or pulling to be an agricultural sorter, which was also restricted in the hypothetical posed to the VE.  The VE testified that "the DOT is somewhat obsolete and doesn't cover many of the issues that we address in hearings."  [Tr., p. 627]  The ALJ accurately portrayed Carey's physical and mental impairments, so he may rely on the VEs opinion that the DOT is somewhat obsolete and doesn't cover many of the issues addressed in the hearing.  *Id.*; *See Cline*, 96 F.3d at 150.  This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers*, 486 F.3d at 241.  Here, the ALJ applied the correct legal standard and his findings are supported by substantial evidence.

Finally, Carey asserts that the ALJ failed to take into account Decker's opinions in posing the hypothetical question to the VE.  This assertion is incorrect.  As discussed previously, the ALJ thoroughly discussed his reasoning and amount of weight he assigned Decker's opinions.  ALJ Paris  correctly utilized Decker's opinions in presenting a hypothetical question that accurately portrays Carey's physical and mental impairments.

## IV.

The ALJ applied the proper legal standard and weight to the opinions of the physical therapist.  Further, the ALJ correctly utilized these opinions in presenting a hypothetical question to the VE that accurately portrays Carey's impairments.  Likewise, the ALJ fulfilled his duty under Soc. Sec. Rul. 00-4p, and appropriately relied on the VE's testimony.  Contrary to Carey's arguments, the ALJ's opinion is supported by substantial evidence.  Accordingly, it is hereby

**ORDERED** as follows:

1.     Plaintiff Kenneth Carey's Motion for Summary Judgment [Record No. 12] is **DENIED**;

2.     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 13] is **GRANTED**; and

3.     The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 1st day of March, 2010.

Signed By:

*Danny C. Reeves*   DCR

United States District Judge

-12-